**Christine DeANGELIS, Plaintiff,**

v.

**A. TARRICONE, INC., et al., Defendants.**

**No. 88 Civ. 7474 (VLB).**

United States District Court, S.D. New York.

Oct. 15, 1993.

Michael V. Kaplen, DeCaro & Kaplen, New York City, for plaintiff.

Robert J. Frisenda, Clark, Gagliardi & Miller, White Plains, NY, for defendant A. Tarricone, Inc.

Timothy P. Coon, Bleakley Platt & Schmidt, White Plains, NY, for defendant Getty Oil Co.

Warren L. Cohen, Tuckahoe, NY, for defendant Henry Pierro.

Mark A. Siesel, Worby PC, White Plains, NY, for defendants Jimmy DeRentiis & Hastings Central Service.

Lawrence M. Rosenstock, Tenzer, Greenblatt, Fallow & Kaplan, New York City, for defendant Gaservice Maintenance Corp.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I

In this litigation involving claims of personal and property injury incurred as a result of gasoline leakage, the medical impact if any on plaintiff is a principal issue necessitating evaluation of plaintiff's entire medical history.

Plaintiff is prepared to submit expert testimony, but successfully objected to neurotoxicological or psychiatric examination by defense experts. Under Fed.R.Civ.P. 35 the court has discretion to permit or deny applications for such examination.[1]

Defendants have moved for selection of a court-appointed expert under Fed.R.Evid. 706. Good cause for doing so exists inasmuch as plaintiff has only been examined by experts connected with her side of the case, and complex issues of interpretation of technical evidence exist. Use of one or more court-appointed experts concerning the physical and psychological impacts of the gasoline leakage is appropriate where called for by specific circumstances, provided that the parties have advance notice and an opportunity to participate in selection of the expert and in the definition of the expert's duties. See *Reilly v. United States,* 863 F.2d 149, 154–61 (1st Cir.1988).

Plaintiff has expressed concern that a court-appointed expert will have undue impact at trial, a view adopted by some courts in the past. See *Gallagher v. LaTrobe Brewing Co.,* 31 F.R.D. 36, 39 (W.D.Pa.1962). This Circuit has, however, recognized use of court-appointed experts in appropriate cases as a "forward looking technique," *Scott v. Spanjer Brothers,* 298 F.2d 928, 930–31 (2d Cir.1962).

Since the decision in *Scott,* concern relating to risks of exclusive reliance on partisan experts in evaluating technical contentions has broadened. See, e.g., *Shu-Tao Lin v. McDonnell Douglas Corp.,* 742 F.2d 45, 48 n. 3 (2d Cir.1984) (importance of pretrial discovery concerning experts under Fed.R.Civ.P. 26); *In re Agent Orange,* 611 F.Supp. 1223, 1256 (E.D.N.Y.1985) (rejection of expert con-

---

1. The denial occurred during a pretrial conference before Judge Edelstein on April 25, 1990 prior to the reassignment of the case to me. Judge Edelstein gave no specific reason for his ruling. It is plausible to assume that Judge Edelstein exercised his discretion to deny an examination under Fed.R.Civ.P. 35 because of concern that examination by potentially hostile partisan experts appointed by her adversaries might exacerbate the extreme anxiety found during examination by one of plaintiff's own physicians.

tentions after detailed analysis); *Trower v. Jones*, 121 Ill.2d 211, 117 Ill.Dec. 136, 520 N.E.2d 297 (1988) (importance of inquiry into sources of bias of partisan experts whose primary income source is testifying); "Impeaching the Partisan Expert," 11 Litigation No 1 at 50 (ABA Fall 1984); Committee on Product Liability, "Discovery of Expert Witnesses Under Federal Rule 26," 44 Record of The Ass'n of the Bar of the City of N.Y. No. 5 at 423 (June 1989).

The Supreme Court has recently emphasized the role of the trial courts in evaluating expert claims utilizing the tools provided by the Federal Rules of Evidence. *Daubert v. Merrell Dow,* — U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The inclusion in the ·Rules of Fed.R.Evid. 706 indicates that, like many other facts which may come to light in a trial, the source of appointment of an expert can be placed in proper perspective by awareness of the factfinder that even an impartial expert can be wrong, and that the impartial expert must be subjected to the same evaluation of credibility as any other witness. Rule 706(c) does provide that a court in its discretion may disclose to a jury that an expert witness was court appointed. See generally Fed.R.Evid. 403 (balancing of relevancy and any potential erroneous use of evidence generally).

Recognizing that plaintiff has a less "long purse"[2] to support the cost of further factfinding at this stage, defense counsel have agreed to pay the cost of any court-appointed expert or experts; they recognize that in order to preserve their impartiality the experts must be contacted solely through the court.

## II

The parties are directed to consult concerning the identity of a reasonable number of knowledgeable impartial experts who could examine all written evidence and also examine the plaintiff in a neutral and non-abrasive manner. In connection with such consultation, each party shall inform the others of any prior connection with any proposed expert which may be recommended. Separate or joint submissions by the parties concerning the experts to be utilized and any proposed guidelines beyond those set forth in this memorandum order shall be submitted within 45 days of the date of this memorandum order. The court will then make the selections, utilizing experts agreed upon by the parties, or relying on its own sources, and will also issue any further guidelines which may be necessary; the court will also fix a reasonable hourly rate to be paid currently by the defendants as billed by the experts.

Such experts will evaluate all available medical and psychological evidence in this case as it affects causation and consequences of plaintiff's medical and psychological difficulties in their overall perspective over time. They will be told that defendants have been ordered by the court to pay the costs of the examination and review of records, and that the selection of the experts was made by the court from names it obtained from both parties or other sources.[3]

The experts will be informed that an examination of the plaintiff is important and should occur if consented to by plaintiff, but is not absolutely essential to the usefulness of a report based on available information. The experts will be informed of the need to avoid any unnecessary upset to plaintiff and to make it clear that they are representing the court, not any of the parties. The plaintiff will be informed that cooperation with the experts is important to her case.[4]

The experts will submit a written report to the court and the parties, and may be called by the court or any party to testify at trial. The experts' evidence will not be conclusive or binding upon any party, and will be tested for admissibility and persuasiveness under

---

**2.** See Taft, *The Delays of the Law,* 18 Yale LJ 28, 35 (1908).

**3.** The parties are directed not to provide the experts with information or comments concerning which, if any, of them recommended the experts ultimately selected.

**4.** In the event plaintiff should fail to cooperate, plaintiff will also be informed by the expert or if necessary through the court that failure to cooperate may lead to an adverse inference. See *Rivera v. O'Neill,* 146 F.R.D. 93, 94 (S.D.N.Y. 1993).

the same standards as other evidence submitted by experts or otherwise in the case. See *Daubert v. Merrell Dow,* —— U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

SO ORDERED.