UNITED STATES of America, Appellee,

v.

John ECKER, Appellant.

No. 93–3651.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1994.

Decided July 21, 1994.

Rehearing Denied Aug. 25, 1994.

Scott Tilsen, Minneapolis, MN, argued, for appellant.

Friedrich Siekert, Minneapolis, MN, argued (David L. Lillehaug and Mary Jo Madigan, on the brief), for appellee.

Before LOKEN, Circuit Judge, BRIGHT and WEIS,* Senior Circuit Judges.

BRIGHT, Senior Circuit Judge.

In 1989 the government indicted John David Ecker for being a felon in possession of a firearm. Because of Ecker's lengthy history of crime and mental illness, the District Court for the District of Massachusetts faced serious questions concerning Ecker's competency to stand trial. Several competency examinations followed, some of which found Ecker competent; other evaluations found him incompetent to stand trial at those times but with a potential for regaining competency. At the most recent medical examination on March 23, 1993 (the seventh for Ecker), the staff at the Federal Medical Center in Rochester, Minnesota ("FMC–Rochester"), found Ecker incompetent to stand trial and unlikely to regain competency in the near future.

Accordingly, in April 1993, the Massachusetts District Court found Ecker incompetent to stand trial and directed that Ecker undergo an evaluation to determine whether, due to his mental condition, he posed a danger to persons or property. As a result of such an evaluation performed at FMC–Rochester, the government filed a petition for Ecker's commitment in the District of Minnesota. At the hearing on the petition, the magistrate judge found against Ecker. The district court adopted the magistrate judge's finding that Ecker, as a mentally ill person, posed a danger to society, and granted the government's petition for commitment.

Ecker now appeals, asserting: (1) that because of the lengthy period which elapsed during the seven evaluations, the federal court no longer possessed the statutory authority to issue a commitment order and, alternatively, that the order of commitment violated Ecker's right to due process; and (2) that the evidence failed to meet statutory requirements for commitment in that the government did not prove by clear and convincing evidence that Ecker's release would present any danger to the person or property of another.

We reject these contentions and affirm.

**I.**

Authorities housed Ecker at the Federal Correctional Institution in Butner, North Carolina ("Butner") immediately after his November 1989 indictment. At Butner, two competency evaluations were produced. A January 1990 evaluation found him incompetent to stand trial but with the possibility of restored competence in the near future. The Massachusetts District Court, on February 2, 1990, found Ecker incompetent to stand trial but ordered another evaluation. The follow-up evaluation, conducted in July of 1990, found Ecker competent. However, Ecker "decompensated" (lost control of himself) at the subsequent competency hearing. The Massachusetts District Court then found Ecker incompetent and ordered another evaluation. The District Court also granted the government's request to move Ecker out of Butner because he had fixated on a female case manager there.[1] Authorities placed Ecker at the Medical Center for Federal

* The HONORABLE JOSEPH F. WEIS, JR., Senior United States Circuit Judge for the United States Court of Appeals for the Third Circuit, sitting by designation.

1. Ecker imagined that he and a female case manager were romantically involved. The case manager denied any relationship with Ecker and no evidence supported Ecker's beliefs. Authorities believed that Ecker's fixation required transferring him from Butner to Springfield.

Prisoners in Springfield, Missouri ("Spring-field").

Three evaluations were conducted at Springfield. A December 1990 evaluation found Ecker incompetent to stand trial with the possibility of regaining competence. A July 1991 evaluation found him competent to stand trial, but in February of 1992, another evaluation found him incompetent. The need for the February 1992 evaluation arose after authorities discovered that sometime after the July 1991 evaluation, Ecker wrote threatening letters to a nurse and a judge.[2]

All of this led to yet another competency hearing conducted before the Massachusetts District Court on July 28, 1992. The District Court found Ecker incompetent to stand trial and committed him to the custody of the Attorney General for a period not to exceed four months for further evaluation pursuant to 18 U.S.C. § 4241(d)(1) (1988). Due to security concerns for the nurse at Springfield, authorities again transferred Ecker, this time to FMC–Rochester.

Two more evaluations were conducted at FMC–Rochester. An evaluation performed within four months of the transfer (November 1992) found Ecker incompetent, but on January 29, 1993, the Massachusetts court extended by four months the time in which to conduct another competency evaluation. The final evaluation, dated March 23, 1993, resulted in the Rochester staff concluding that Ecker was incompetent to stand trial, and that he would be unlikely to attain competen-

cy in the foreseeable future so as to permit trial.

On April 16, 1993, the Massachusetts District Court, based on the March 23 evaluation, found Ecker incompetent to stand trial, and stated that if appropriate, an evaluation should be conducted on the separate issue of indefinite commitment under 18 U.S.C. § 4246 (1988). Ecker appealed this decision to the First Circuit, arguing that the district court lacked authority to order Ecker's further commitment because its statutory authority to do so had expired. The First Circuit dismissed the appeal as moot without prejudice to Ecker's argument concerning the validity of § 4246 proceedings.

On May 10, 1993, the government filed its Petition for Commitment in the United States District Court for the District of Minnesota. At the same time, the government filed the Warden's Certificate of Mental Disease or Defect with Clerk of the District Court. See 18 U.S.C. § 4246.[3]

After a hearing on the petition held June 25, 1993, Magistrate Judge Lebedoff found Ecker mentally ill and dangerous. The district court adopted the Magistrate's Report and Recommendation and ordered commitment. Ecker timely appealed.

Ecker has been housed at FMC–Rochester during the pendency of this appeal. The felon in possession charge remains pending in Massachusetts.

---

2. Specifically, Ecker wrote an obscene, threatening letter to a nurse named "Daisy" at Springfield, and also wrote a threatening letter to Magistrate Judge Ponsor.

3. Section 4246 reads in relevant part:

**Hospitalization of a person due for release but suffering from mental disease or defect**
    (a) Institution of proceeding.—If the director of a facility in which a person is hospitalized certifies that a person whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodi-

ly injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined. The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the court that ordered the commitment. The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. A certificate filed under this subsection shall stay the release of the person pending completion of procedures contained in this section.

## II.

**A. Whether the government violated the time requirements of law so as to lose the power to seek commitment of Ecker.**

Ecker challenges the district court's power to order his indefinite confinement under 18 U.S.C. § 4246, contending that the unreasonably lengthy "evaluation" period made the commitment proceeding unlawful and unwarranted.

We reject this argument.[4] Until the final evaluation of March 23, 1993, all previous reports indicated that Ecker either possessed competency to stand trial or might regain competency. The applicable statute, 18 U.S.C. § 4241, sets forth flexible time requirements with respect to the evaluation of an accused's competency to stand trial. Specifically, § 4241(d)(1) provides that after a determination of incompetency to stand trial, the government may confine an individual for up to four months during which time it must determine if there is a "substantial probability" that the defendant will attain competency in the foreseeable future. The statute further provides "for *an additional reasonable period of time* until—"

> (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or
>
> (B) the pending charges against him are disposed of according to law;

whichever is earlier.

§ 4241(d)(2) (emphasis added).

■ As we read the statute, the overall determination of ultimate competency to stand trial can extend over a reasonable period. Considering the background and evidence, we cannot say that the government, the Massachusetts District Court, nor the various federal institutions proceeded unreasonably. We note that the magistrate judge found, among other things, that "the transfers [between institutions] were, in fact, necessary due to Respondent's [Ecker's] fixations." Magistrate Judge's Rep. & Rec. at 11. The court wrote:

> With each transfer, the competency evaluations had to be reinitiated. Although Respondent argues that his "national tour of federal medical centers" unconstitutionally delayed his final determination of competency, the Court finds that the transfers were, in fact, necessary due to Respondent's fixations.

*Id.* These findings of fact are not clearly erroneous. The Magistrate Judge concluded that there existed "no evidence ... suggesting that [the government] at any time ignored the statute and its procedures." *Id.* After reviewing the record, we agree.

■ At all times Ecker remained subject to criminal process calling for a mandatory minimum sentence of fifteen years imprisonment. He remained subject to possible trial until the final judicial determination of incompetency on April 16, 1993. Thus, Ecker's total time in confinement for purposes of the competency determination was far less than the possible sentence. No due process violation exists for the length of the overall process here. *See United States v. DeBellis,* 649 F.2d 1 (1st Cir.1981) (defendant cannot be committed for determination of competency for period longer than the maximum possible sentence he faces); *Birnbaum v. Harris,* 222 F.Supp. 919 (W.D.Mo.1963) (three years confinement to determine competency not *per se* too long if less than the maximum possible sentence for the underlying crime).[5]

In support of his arguments, Ecker also cites *United States v. Baker,* 807 F.2d 1315

---

**4.** We note that Ecker's statutory and due process arguments contain two distinct implications: first, that the government on one or more occasions failed to follow the explicit language of § 4241; and second, that the overall length of Ecker's confinement unlawfully deprived him of due process. While Ecker stresses the second point, we address each above.

**5.** We reject appellant's claim that this period exceeds statutory bounds on the authority of *United States v. Charters,* 829 F.2d 479 (4th Cir.

1987), *vacated,* 863 F.2d 302 (4th Cir.1988) (en banc), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). Ecker relies upon the initial panel opinion which held that the government did not have lawful custody of Charters because he had been confined for three years while undergoing evaluations to determine his competency to stand trial. 829 F.2d at 487. The Fourth Circuit's subsequent *en banc* decision, however, which concerns primarily the question of whether the government could forci-

# 970

(6th Cir.1986). In *Baker*, the Sixth Circuit determined that the accused, a mentally ill man, had been held in violation of his due process rights. The court provided two reasons in support of its conclusion: (1) Baker was not released after his four-month confinement under § 4241(d), even though no determination had been made that he would likely have attained competency within a reasonable time, *id.* at 1320; and (2) Baker failed to receive constitutionally adequate notice that a scheduled hearing was in fact a § 4246 civil commitment hearing seeking to commit him indefinitely. *Id.* at 1324. Neither of these due process infirmities occurred in Ecker's case. Ecker does not challenge the validity of the four evaluations finding him likely to attain competency, and the two evaluations finding him competent to stand trial. Further, Ecker raises no claim of inadequate or untimely notice concerning the hearings leading to his commitment under § 4246. *Baker* does not require reversal here.

Thus, the record discloses neither a clear violation of the statute in ordering each of the several competency evaluations, nor an unreasonable overall delay in the proceedings under the circumstances. Accordingly, we reject appellant's attack on the power of the government to invoke the provisions for continued custody of Ecker under § 4246 and the jurisdiction of the district court to grant the petition.

**B. Whether the government proved by clear and convincing evidence that respondent Ecker presents a danger to the person or property of another.**

■ The district court held that the government met its burden under 18 U.S.C. § 4246(a) with respect to all three prongs of the statutory test: (1) mental disease or defect; (2) dangerousness if released; and (3) no suitable state placement. Ecker challenges only the finding of dangerousness. We review a determination of dangerousness for clear error. *United States v. Steil*, 916 F.2d 485, 487 (8th Cir.1990). Based on our careful review of the record, we reject Ecker's contention that the government failed to present clear and convincing evidence of Ecker's dangerousness.

■ Dr. Quinn testified that major factors in determining potential dangerousness include: a history of dangerousness, a history of drug or alcohol use, identified potential targets, previous use of weapons, any recent incidents manifesting dangerousness, and a history of problems taking prescribed medicines. Having examined Ecker, and having gone over his voluminous mental health records, Quinn testified that each of the six factors pointed to a conclusion of dangerousness.[6]

Dr. Lucas opined that Ecker was not dangerous, ascribing great significance to the fact that Ecker's last assault occurred over ten years ago, and that Ecker had not assaulted anyone during his three years in confinement. Overt acts of violence, however, are not required to prove dangerousness. *Steil*, 916 F.2d at 487–88 (delusions and threats enough to prove dangerousness even though defendant never had the opportunity to act on them).[7]

Under these circumstances, we cannot say that the government failed to present clear

---

bly medicate Charters, presumes Charters' lawful confinement. 863 F.2d at 306. Moreover, Charters' medical record did not contain a single psychological evaluation finding him competent or even potentially competent to stand trial. Accordingly, his three years of federal confinement violated statutory procedures. Ecker's case differs significantly from Charters' in that numerous evaluations conducted during the course of Ecker's confinement found him competent or likely to attain competence within a reasonable time.

6. Dr. Quinn testified that (1) Ecker had a history of violent behavior which included a brutal assault and at least one conviction for arson; (2)

Ecker had admitted to prior use of drugs and alcohol; (3) Ecker had named potential targets in nurse Daisy and Magistrate Judge Ponsor; (4) Ecker had a history of carrying weapons, including the pending charge in this case; (5) Ecker's more recent conduct included the threatening letters produced while confined at FMC–Rochester; and (6) Ecker admitted that he often did not take prescribed medications and lied to psychologists about it.

7. In *Steil*, we affirmed the district court's finding of dangerousness under the clearly erroneous standard. In that case, all the medical opinions rendered found the defendant dangerous. 916 F.2d at 488. Here, there exist contrary medical

and convincing evidence of Ecker's dangerousness. We do observe that the Attorney General must continue efforts to place Ecker in a state facility of his domicile and that while confined Ecker shall receive treatment which may lead to his release or conditional release. *See* 18 U.S.C. § 4246(d)–(e).

## III.

Accordingly, we affirm the judgment of the district court.

opinions. Unlike Steil, however, whose sole manifestations of dangerousness were threatening letters composed while confined, Ecker has a history of *actual violent conduct* as well as writing disturbed, threatening letters. Moreover, Ecker has a history of drug abuse, weapons possession, and failing to take prescribed medications, all of which support a finding of probable dangerousness.