ORDER RE GOVERNMENT’S MOTION TO CLARIFY ORDER COMMITTING DEFENDANT FOR TREATMENT
 

 I.
 

 Introduction
 

 A motion hearing came on regularly before this Court on November 4, 1999. Phillip Halpern, Assistant United States Attorney, appeared for the Government, and Shaun Khojayan appeared on behalf of Defendant Jesus Sanchez-Hurtado (“Defendant”). The Government moved the Court for clarification of its order of July 2, 1999. Specifically, the Government sought a declaration from the Court that commitment of Defendant for diagnosis and treatment of his mental defect includes implicit authority to administer psychotropic medication, even against Defendant’s will. Defendant opposed his further commitment and the involuntary medication.
 

 II.
 

 Factual Background
 

 Defendant is a forty-four year old male who was born in Baja, California. On or about April 23, 1999, Defendant was arrested for (1) attempted illegal reentry into the United States in violation of 8 U.S.C. § 1326; and (2) falsely and willfully misrepresenting his national status to an Immigration and Naturalization Services (“INS”) Inspector in violation of 18 U.S.C. § 911. On May 6, 1999, Defendant was arraigned before Magistrate Judge Louisa S. Porter. A preliminary examination was set for May 20,1999.
 

 On May 20, 1999, the date set for the preliminary examination, a hearing was held before Magistrate Judge Larry A. Burns in Judge Porter’s absence. At that hearing, Mr. Khojayan requested that Defendant be examined in order to determine his competency to stand trial. Judge Burns found that there were “reasonable grounds to believe that Mr. Jesus San
 
 *1050
 
 chez-Hurtado may be incompetent to understand the nature and consequences of the proceedings against him and/or assist properly in his defense.” (Order Appointing Psychiatrist Pursuant to 18 U.S.C. § 4241(b) for Examination to Determine Present Mental Competency at 1.) In accordance with this finding, Judge Burns ordered that Defendant be examined by Dr. Mark Kalish to make a determination about Defendant’s competency.
 
 (Id.
 
 at 1-2.)
 

 Dr. Kalish conducted a psychiatric examination of Defendant on June 15, 1999. During that examination, Defendant shared with Dr. Kalish his “messianic delusion” that he was Jesus Christ. (Report from Mark A. Kalish to Judge Burns of 6/21/99, at 2.) Defendant also demonstrated auditory hallucinations.
 
 (Id.)
 
 Based upon his clinical evaluation, Dr. Kalish reported that Defendant suffered “from a significant mental illness.”
 
 (Id.
 
 at 4.) Dr. Kalish concluded that Defendant was “presently incompetent to assist his attorney in the preparation of a defense to the charges pending against him.”
 
 (Id.
 
 at 5.) Dr. Kalish expressed his belief that treatment with antipsychotic medications would quickly restore Defendant to competency.
 
 (Id.)
 

 On July 1, 1999, a hearing was held before Judge Porter to determine Defendant’s mental competency. During that hearing, the Court received in evidence Dr. Kalish’s report. After considering the report and comments from counsel, the Court found that Defendant was “presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.” (Order Finding Def. Not Competent to Stand Trial and Committing Def. for Treatment Pursuant to 18 U.S.C. § 4241(d) at 1.) In accordance with this finding, the Court ordered that Defendant be committed to the custody of the Attorney General for hospitalization and treatment to ensure Defendant’s competency to stand trial, “and to also help clarify his diagnostic picture.”
 
 (Id.)
 
 A further status conference was scheduled for November 4,1999.
 

 On or about August 10, 1999, Defendant was admitted to the Mental Health Division of the Federal Correctional Institution (“FCI”) at Butner, North Carolina. (Forensic Evaluation from FCI Butner to Judge Porter of 10/29/99, at 1.) Upon his arrival at that facility, Defendant was seen individually by Moira Artiguez, M.D., Fellow in Forensic Psychiatry, with supervision by Bruce Berger, M.D., a staff psychiatrist at FCI Butner.
 
 (Id.)
 
 Defendant also received
 
 a
 
 psychological consultation with Angela Walden, Ph.D.
 
 (Id.)
 

 Defendant underwent a physical examination and laboratory tests on August 10, 1999.
 
 (Id.
 
 at 5.) At the time of his initial mental status examination, Defendant reported “auditory hallucinations, ‘the voice of God’ and a ‘whispering noise’ ” that indicated to him that his mind was being actively surveilled by the CIA.
 
 (Id.)
 
 He also stated that he was “the Holy Spirit.”
 
 (Id.)
 

 The forensic evaluation from FCI But-ner indicates that Defendant “functioned adequately on the open compound, spending much of his time alone, seated in the dayroom watching the activity of staff and other inmates. He attended Catholic Mass several times per week. He was pleasant and amenable to staff directions.”
 
 (Id.
 
 at 6.) However, the evaluation also indicates that Defendant continued to exhibit delusional beliefs and auditory hallucinations, and persisted in his belief that “he is ‘The Son of God,’ that he is an informant for the CIA, and that his daughter’s organs had been taken from her.”
 
 (Id.)
 
 The treatment team at FCI Butner felt that Defendant’s beliefs “would interfere in a significant way with his ability to work with an attorney and prevented his rational comprehension of the nature of the charges against him.”
 
 (Id.)
 

 
 *1051
 
 The treatment team offered a trial of antipsychotic medications to Defendant to deal with his delusional beliefs. Defendant “did not agree that his auditory hallucinations and expressed delusional thoughts represented psychosis.”
 
 (Id.)
 
 Defendant refused the trial of medications, “stating he did not believe he had a mental illness.”
 
 (Id.)
 

 On September 7, 1999, an involuntary medication hearing was held.
 
 (Id.)
 
 The hearing officer agreed with the treatment staff that Defendant was psychotic and “that he was not competent to stand trial in his current mental state.”
 
 [1]
 

 (Id.)
 
 Defendant disagreed with this finding and appealed that decision to the warden.
 
 (Id.)
 
 The warden denied Defendant’s appeal on September 14, 1999.
 
 (Id.)
 
 Defendant has not received any treatment with antipsy-chotic medications pending resolution of the legal issues involved in the decision whether to involuntarily medicate him.
 

 The forensic evaluation from FCI But-ner indicates that Defendant is diagnosed with Schizophrenia, Paranoid Type.
 
 (Id.
 
 at 7.) The evaluation indicates that the usual treatment for this diagnosis is antipsychotic medications.
 
 (Id.)
 
 It is the belief of the treatment staff at FCI Butner that Defendant could be restored to competency with this treatment.
 
 (Id.
 
 at 8.)
 

 III.
 

 Commitment Under 18 U.S.C. § 4241(d)
 

 18 U.S.C. § 4241 sets out the procedures that apply in determining whether a defendant is competent to stand trial. Section 4241(d) provides that if, after a hearing, a court finds that a defendant is incompetent to stand trial,
 

 the court shall commit the defendant to the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility -
 

 (1) for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed; and
 

 (2) for an additional reasonable period of time until -
 

 (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the trial to proceed; or
 

 (B) the pending charges against him are disposed of according to law;
 

 whichever is earlier.
 

 18 U.S.C. § 4241(d).
 

 In this case, the Court held a hearing regarding Defendant’s competency, and after finding him incompetent to stand trial, committed Defendant to the custody of the Attorney General for treatment in a suitable facility for a reasonable period of time. As stated in the statute, the purpose of this hospitalization is to determine whether there is a substantial probability that Defendant will, in the foreseeable future, attain the capacity for the trial to proceed. The medical staff at FCI Butner believe that the appropriate treatment for Defendant’s incompetence is antipsychotic medications, and that with such treatment he could be restored to competency. However, Defendant has refused the antipsy-chotic medications, and no other treatment has been discussed. This Court, therefore, finds itself in the position of being unable to determine if there is a substantial probability that Defendant will be made competent without first deciding whether Defendant may be medicated against his will. If Defendant may be medicated against his will, then there is a substantial probability
 
 *1052
 
 that he will, in the foreseeable future, attain competency. However, if Defendant may
 
 not
 
 be medicated against his will, and in the absence of some other form of treatment, there is little, if any, chance that Defendant will attain the capacity for the trial to proceed.
 

 The Court notes that Defendant’s hospitalization began on August 10, 1999, and that according to 18 U.S.C. § 4241(d)(1), his four-month time period will elapse on December 10, 1999. Defendant argues that a “substantial injustice” would result if he was hospitalized for an additional four months. However, the Court has not recommended any hospitalization of Defendant beyond the four-month time period as permitted by the statute, much less an additional four months. At this time, the Court finds that it is necessary to continue Defendant’s hospitalization until December 10, 1999, but until the four-month time period has elapsed, the Court need not decide whether to continue Defendant’s hospitalization beyond that time period.
 
 [2]
 

 IV.
 

 Involuntary Medication
 

 As stated above, before this Court can determine whether there is a substantial probability that Defendant will, in the foreseeable future, attain the capacity for the trial to proceed, the Court must determine whether Defendant may be treated with antipsychotic medications against his will. The Government argues that Defendant should be involuntarily medicated. Defendant disagrees.
 

 The administrative safeguards associated with psychiatric treatment and medication of persons in the custody of the Attorney General are set out in 28 C.F.R. § 549.43. Defendant asserts that it is arguable whether these procedures apply to him.
 
 (See
 
 Def.’s Opp’n to Further Commitment Under 4241(D) and Involuntary Medication at 4.) However, Defendant does not provide the Court with any authority to support this assertion. In the absence of such authority, the Court finds that Defendant is covered by the administrative safeguards of 28 C.F.R. § 549.43.
 

 The Government argues that it' has complied with the administrative safeguards as set out in the regulations. Defendant does not explicitly dispute this finding. The Court’s own inquiry indicates that Defendant did receive an administrative hearing in accordance with the federal regulations.
 
 (See
 
 Forensic Evaluation, at 6.) It also indicates that Defendant submitted an appeal of the hearing officer’s decision, which he is entitled to do under the regulations.
 
 (See id.)
 
 However, the evaluation does not provide any details of the hearing, such as the name of the hearing officer and whether that person was involved in Defendant’s diagnosis or treatment, nor does it indicate whether Defendant received all of the procedural safeguards associated with the hearing. Although the Government argues that it has complied with the administrative safeguards, there is no evidence presently before the Court to make that determination, and the Court declines to do so in the absence of such evidence.
 

 Assuming, however, that the Government has complied with the administrative safeguards, it argues that “[d]ue process requires no more.”
 
 (See
 
 Gov’t’s Mot. to Clarify Order Committing Def. for Treatment at 5.) Defendant counters that due process requires that the decision whether to forcibly medicate Defendant must survive strict scrutiny.
 
 (See
 
 Def.’s Opp’n at 4-5.)
 

 In support of its position, the Government primarily relies on the decisions of
 
 Washington v. Harper,
 
 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990), and
 
 Riggins v. Nevada,
 
 504 U.S. 127, 112 S.Ct.
 
 *1053
 
 1810, 118 L.Ed.2d 479 (1992). In
 
 Harper,
 
 the United States Supreme Court held that prisoners possess “a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs” under the Due Process Clause. 494 U.S. at 221-22, 110 S.Ct. 1028. The Supreme Court held that “given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsy-chotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate’s medical interest.”
 
 Id.
 
 at 227, 110 S.Ct. 1028, 108 L.Ed.2d 178.
 
 Harper,
 
 however, is distinguishable from the present case in one major respect. In
 
 Harper,
 
 the Court was dealing with a prisoner who had assaulted two individuals, while the Defendant in this case has not demonstrated any assaul-tive or violent behavior during his hospitalization. In fact, the report from FGI But-ner indicates that Defendant is “pleasant and amenable to staff direction.”
 
 (See
 
 Forensic Evaluation, at 6.) In the face of this significant factual difference, this Court finds that
 
 Harper
 
 is not controlling in the present case.
 

 The more persuasive authority in the present case is found in
 
 Riggins.
 
 In that case, a pre-trial detainee who reported hearing voices in his head and trouble sleeping was treated with antipsychotic medications. 504 U.S. at 129, 112 S.Ct. 1810. At some point during the trial, the defense moved the court for an order suspending the antipsychotic medication until the end of the defendant’s trial.
 
 Id.
 
 at 130, 112 kS.Ct. 1810. The defense argued that “continued administration of these drugs infringed upon [the defendant’s] freedom and that the drugs’ effect on his demeanor and mental state during trial would deny him due process.”
 
 Id.
 
 The defense also asserted that because defendant “would offer an insanity defense at trial, he had a right to show jurors his True mental state.’ ”
 
 Id.
 
 After an eviden-tiary hearing, the court denied the defendant’s motion with no indication of its rationale.
 
 Id.
 
 at 130-31, 112 S.Ct. 1810. The Nevada Supreme Court affirmed that decision.
 
 Id.
 
 at 132, 112 S.Ct. 1810.
 

 The U.S. Supreme Court reversed the decision of the state courts due to an absence of necessary findings.
 
 Id.
 
 at 136-38, 112 S.Ct. 1810. The Court stated that due process certainly would have been satisfied “if the prosecution had demonstrated, and the District Court had found, that treatment with antipsychotic medication was medically appropriate and, considering less intrusive alternatives, essential for the sake of Riggins’ own safety or the safety of others.”
 
 Id.
 
 at 135, 112 S.Ct. 1810. The Court further stated that the government “might have been able to justify medically appropriate, involuntary treatment with the drug by establishing that it could not obtain an adjudication of Riggins’ guilt or innocence by using less intrusive means.”
 
 Id.
 

 Here, the Government argues that the latter statement is the standard for determining whether Defendant should be involuntarily medicated, while Defendant argues the former. Exactly which standard applies, however, is unclear. What is clear from the majority opinion is that it was not prescribing any substantive standards, and was certainly not adopting a standard of strict scrutiny.
 
 Id.
 
 at 136, 112 S.Ct. 1810.
 

 While the majority opinion in
 
 Riggins
 
 is persuasive authority, it, too, is factually and legally distinguishable from the present case.
 
 Riggins
 
 involved a pre-trial detainee who agreed to treatment with anti-psychotic medication before trial. Riggins eventually attained the capacity for the trial to proceed, and then during his trial requested that he be removed from the antipsychotic medications. The majority opinion in
 
 Riggins
 
 addressed the issue of “whether forced administration of antipsy-chotic medication
 
 dming trial
 
 violated rights guaranteed by the Sixth and Fourteenth Amendments.”
 
 Id.
 
 at 132-33, 112 S.Ct. 1810 (emphasis added). In contrast, in the present case Defendant has not
 
 *1054
 
 agreed to be medicated with antipsychotic drugs, nor has he attained the capacity for the trial to proceed. Hence, the issue in this case is whether forced administration of antipsychotic drugs before trial, and for the sole purpose of making Defendant competent to stand trial, violates Defendant’s constitutional rights.
 

 This precise issue is more squarely addressed by Justice Kennedy in his concurring opinion in
 
 Riggins.
 
 There, Justice Kennedy discusses the effects oí involuntary medication with antipsychotic drugs on the right of a criminal defendant to a fair trial. He defines the issue as whether the government’s “interest in conducting the trial allows it to ensure the defendant’s competence by involuntary medication, assuming of course there is a sound medical basis for the treatment.”
 
 Id.
 
 at 140, 112 S.Ct. 1810 (Kennedy, J., concurring). Justice Kennedy writes that in this situation “elementary protections against state intrusion require the State in every case to make a showing that there is no significant risk that the medication will impair or alter in any material way the defendant’s capacity or willingness to react to the testimony at trial or to assist his counsel.”
 
 Id.
 
 at 141, 112 S.Ct. 1810 (Kennedy, J., concurring).
 

 In addition to
 
 Harper
 
 and
 
 Riggins,
 
 the Government cites
 
 Kulas v. Valdez,
 
 159 F.3d 453 (9th Cir.1998), as the controlling Ninth Circuit law applicable to this case. However, that case arose out of a civil rights action filed by a pre-trial detainee against the doctors involved in his medical treatment at a county jail, and the judge who committed him to the county facility.
 
 Id.
 
 at 455. The constitutional rights guaranteed to criminal defendants were not at issue in that civil trial, therefore that case is not controlling here.
 

 Counsel concede that there are no other Ninth Circuit cases clearly on point with the facts and issue involved in this case. The Sixth Circuit, however, has addressed this issue in
 
 United States v. Brandon,
 
 158 F.3d 947 (6th Cir.1998), which appears to be factually consistent with the present case. In
 
 Brandon,
 
 a pre-trial detainee was found incompetent to stand trial and committed to the custody of the Attorney General pursuant to 18 U.S.C. § 4241(d).
 
 Id.
 
 at 950. The Federal Medical Center in Rochester, Minnesota, recommended that Brandon be treated with antipsychotic medication, which Brandon refused to take.
 
 Id.
 
 Brandon then moved the court for a evidentiary hearing to determine whether the hospital could forcibly medicate him with antipsychotic medication.
 
 Id.
 
 The court denied that motion, and Brandon appealed.
 
 Id.
 
 The Sixth Circuit phrased the issue before it as “whether the Due Process Clause of the Fifth Amendment requires a judicial hearing to determine whether a non-dangerous pretrial detainee can be forcibly medicated in order to render him competent to stand trial.”
 
 Id.
 
 In deciding this issue, the court considered four factors; (1) the individual’s interests, (2) the government’s interests, (3) the value of a judicial hearing, and (4) the risks of an administrative hearing.
 
 Id.
 
 at 953-56. The court stated that the ultimate decision was not “whether treatment with drugs is in the detainee’s medical interests,” but rather whether the drugs would effect the detainee’s right to a fair trial and his right to counsel.
 
 Id.
 
 at 955. After considering these factors, the court concluded that “due process considerations” required a judicial hearing.
 
 Id.
 

 Here, as in
 
 Brandon,
 
 the Court is faced with a non-dangerous pre-trial detainee who has been found incompetent to stand trial, has been committed to the custody of the Attorney General, and has refused an-tipsychotic medication against the recommendation of his treating physicians. Considering these factual similarities, this Court finds the reasoning of the Sixth Circuit in
 
 Brandon
 
 particularly compelling. Based upon that reasoning, and the majority opinion in
 
 Riggins,
 
 this Court finds that a judicial hearing is required in
 
 *1055
 
 this case.
 
 [3]
 

 Although
 
 Riggins
 
 supports holding a judicial hearing in this situation, as stated above, the majority opinion does not set forth any substantive standards to apply to the hearing. Accordingly, this Court looks to
 
 Brandon
 
 for such standards. The
 
 Brandon
 
 court found that involuntary treatment with antipsychotic drugs affected a fundamental right.
 
 Id.
 
 at 957. As a result, the court stated that the government’s request to forcibly medicate Brandon “must be reviewed under the strict-scrutiny standard.”
 
 Id.
 
 at 957. This result, however, is contrary to the majority opinion in
 
 Riggins,
 
 wherein the Supreme Court clearly stated that it was not adopting a standard of strict scrutiny. 504 U.S. at 136, 112 S.Ct. 1810. Accordingly, this Court declines to adopt a standard of strict scrutiny for the judicial hearing in this case.
 

 In light of the opposite standard set out by the Sixth Circuit in
 
 Brandon,
 
 this Court returns to
 
 Riggins
 
 for guidance as to the appropriate standard to apply to the judicial hearing. Based upon both the majority opinion in
 
 Riggins
 
 and Justice Kennedy’s concurrence, this Court sets out a three-prong test which the Government must satisfy before Defendant may be forcibly medicated with antipsychotic drugs.
 

 First, the government must demonstrate that “administration of antipsychotic medication [is] necessary to accomplish an essential state policy.”
 
 Riggins,
 
 504 U.S. at 138, 112 S.Ct. 1810. Second, the government must show that “there is a sound medical basis for treatment with an-tipsychotic medication.”
 
 Id.
 
 at 140, 112 S.Ct. 1810 (Kennedy, J., concurring). In making this showing, the government may provide “medical testimony regarding [Defendant’s] mental illness and its symptoms, as well as the effects that antipsy-chotic medication will have, both beneficial and harmful, on [Defendant’s] physical and mental health.”
 
 Brandon,
 
 158 F.3d at 960. Third, and most importantly, the government must establish “that there is no significant risk that the medication will impair or alter in any material way the defendant’s capacity or willingness to react to the testimony at trial or to assist Ms counsel.”
 
 Riggins,
 
 504 U.S. at 141, 112 S.Ct. 1810 (Kennedy, J., concurring). Although this Court rejects the strict scrutiny standard set out in
 
 Brandon,
 
 this Court agrees that “the risk of error and possible harm involved in deciding whether to forcibly medicate an incompetent, non-dangerous pre-trial detainee” are substantial.
 
 Brandon,
 
 158 F.3d at 961. Accordingly, the government must establish these elements “by clear and convincing evidence.”
 
 Id.
 

 In
 
 determining whether the government has established these three elements, the Court will balance several factors. First, the Court will consider Defendant’s interests at stake in this decision. Second, the Court will weigh the interests of the Government in forcibly medicating Defendant with antipsychotic drugs. In addition to these two major factors, the Court will also consider “(1) whether the pretrial detainee is dangerous to himself or others, (2) the seriousness of the crime, and (3) whether the detainee will be released from confinement if not made to stand trial.”
 
 Id.
 
 at 960. Lastly, the Court may consider whether there are any less intrusive alternatives available to enable Defendant to attain the capacity for the trial to proceed.
 
 See Riggins,
 
 504 U.S. at 135, 112 S.Ct. 1810.
 

 V.
 

 Conclusion
 

 After thoroughly reviewing the Government’s moving papers, Defendant’s opposi
 
 *1056
 
 tion papers, hearing oral argument from the parties and considering the relevant case law, this Court finds that a further judicial hearing is required to determine whether Defendant may be involuntarily medicated with antipsychotic drugs. Accordingly, IT IS HEREBY ORDERED:
 

 1. An evidentiary hearing shall be held on December 9, 1999, at 9:00 a.m. in Courtroom H. The purpose of this eviden-tiary hearing is to determine (1) whether Defendant shall be involuntarily medicated with antipsychotic drugs in order to be made competent for the trial to proceed, and (2) whether to continue Defendant’s commitment under 18 U.S.C § 4241(d). The Government shall have an opportunity to make the requisite showing as discussed above. Defendant shall have an opportunity to present his own evidence and to rebut the Government’s evidence.
 

 2. A letter and the forensic evaluation from FCI Butner dated October 26, 1999, have been received by the Court and are attached to this Order. The Court hereby enters these documents into evidence in this case. If Defendant requests the presence of the treating psychiatrists and psychologist that contributed to this report at the evidentiary hearing, such request shall be made in writing to the Government and the Court within ten (10) days of the date of this order.
 

 3. If Defendant wishes to be transported back to San Diego for this hearing, or if he wishes to have a guardian ad litem appointed to represent his interests at this hearing, such request shall be made in writing to the Government and the Court within ten (10) days of this order.
 

 4. Any request to continue this hearing shall be made at least ten (10) days before the hearing.
 

 
 *1057
 
 [[Image here]]
 

 
 *1058
 
 [[Image here]]
 

 
 *1059
 
 [[Image here]]
 

 
 *1060
 
 [[Image here]]
 

 
 *1061
 
 [[Image here]]
 

 
 *1062
 
 [[Image here]]
 

 
 *1063
 
 [[Image here]]
 

 
 *1064
 
 [[Image here]]
 

 
 *1065
 
 [[Image here]]
 

 [1]
 

 . At oral argument, the Government represented that the hearing officer also recommended that Defendant be treated with anti-psychotic medications. However, the Court finds no such indication in the forensic evaluation.
 

 [2]
 

 . Notwithstanding the above, the Court notes that whether that four-month time period is an absolute limitation appears to be open to question.
 
 Compare United States v. Ecker,
 
 30 F.3d 966, 969 (8th Cir.1994),
 
 with United States v. Donofrio,
 
 896 F.2d 1301, 1303 (11th Cir.1990).
 

 [3]
 

 . While the majority opinion in
 
 Riggins
 
 did not explicitly hold that a judicial hearing is required, the opinion’s criticism of the district court’s "laconic order,” and its remand of the case for further proceedings implies that a judicial hearing is required. 504 U.S. at 136, 112 S.Ct. 1810.