**UNITED STATES of America, Petitioner,**

v.

**Joseph SMITH, Respondent.**

**C.A. No. 12–12086–MLW.**

United States District Court, D. Massachusetts.

Aug. 29, 2013.

Rayford A. Farquhar, United States Attorney's Office, Boston, MA, for Petitioner.

Ian Gold, Timothy G. Watkins, Federal Public Defender Office, Boston, MA, for Respondent.

## MEMORANDUM AND ORDER

WOLF, District Judge.

## I.  SUMMARY

On November 8, 2012, five days before respondent Joseph Smith was due to be released from serving his federal prison sentence, the government filed a petition to have him civilly committed pursuant to

18 U.S.C. § 4246 (the "Petition").[1] The court appointed counsel for Smith, designated an examiner to perform a psychiatric evaluation of him, considered three expert reports, and heard two days of testimony and an additional day of argument.

For the reasons explained below, the court finds that the government has not met its burden to prove by clear and convincing evidence that Smith is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to the property of another, as required to justify continued commitment under § 4246. Therefore, the court is ordering Smith's release. However, as agreed by the parties, the order is being stayed until September 30, 2013 to permit arrangements to be made to transport Smith to the Middle District of Georgia and for his housing there.

## II. PROCEDURAL HISTORY

Smith's 120–month sentence for Possession with Intent to Distribute More Than Five Grams of Cocaine Base, imposed in 2003 by a judge of the United States District Court for the Middle District of Georgia, was due to expire on November 13, 2012. On November 8, 2012, the government filed the Petition for a hearing to determine whether Smith, who is incarcerated in Massachusetts at FMC Devens, should be civilly committed to the custody of the Attorney General pursuant to 18

U.S.C. § 4246. As required by § 4246(a), the government filed with the Petition a certification by J. Grondolsky, Warden of FMC Devens, that in his view Smith was "currently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." This certification stayed Smith's release pending completion of the procedures prescribed by § 4246. *See* 18 U.S.C. § 4246(a).

With the Petition the government also filed: (1) an October 17, 2012 Risk Assessment Panel Report in which a panel of FMC Devens staff psychologists recommended Smith's commitment pursuant to § 4246 (the "2012 Panel Report"); (2) correspondence between Grondolsky and the Department of Behavioral Health and Developmental Disabilities for the State of Georgia indicating that the State of Georgia had declined to assume custody of Smith, *see* § 4246(a); and (3) a November 1, 2012 statement from Smith's prison account showing a balance of $0.49, *see* §§ 4246(c), 4247(d).

On November 14, 2012, the court appointed counsel to represent Smith. *See* §§ 4246(c), 4247(d). At a December 11, 2012 scheduling conference, the parties agreed that the court should order a psychiatric evaluation of Smith pursuant to §§ 4246(b) and 4247(b), (c). The court designated Dr. Julia M. Reade to examine Smith and prepare a psychiatric report in the manner required by § 4247(c). Smith waived his right under § 4247(b) to re-

---

**1.** This case raises a concern that this court has expressed previously. As this court wrote with regard to civil commitment pursuant to the Adam Walsh Act, "it appears ... that Congress and the President contemplated that prisoners would, whenever feasible, be certified as [] dangerous well before their sentences ended so the necessary issues could be decided before the respondents were due to

be released." *United States v. Wilkinson*, C.A. No. 07–12061–MLW, 2008 WL 427295, at *1 (D.Mass. Feb. 14, 2008). In the instant case, this should have been possible. However, by waiting to file the Petition until five days before Smith's sentence was due to expire, the Bureau of Prisons has caused Smith to spend nine more months in custody than this court now finds justified.

quest an additional examiner selected by him.

On January 29, 2013, Dr. Reade's report was filed under seal and served on the parties. *See* § 4247(c). A redacted version was later filed for the public record. In her report, Dr. Reade concluded that Smith is "acutely ill with a partially-treated psychotic disorder, most consistent with Schizophrenia, Paranoid Type," and that as a result his release would create a substantial risk of bodily injury to another person or serious damage to property. *See* Reade Report at 9–10.

The court granted the parties extensions of time to confer and make submissions concerning whether Smith should be civilly committed.

On June 6, 2013, the court held an evidentiary hearing as required by § 4246(a). Smith testified at the hearing. The court admitted as Exhibit 1 documents regarding Smith's conviction in Georgia, including the indictment, plea agreement, Pre-sentence Report, and judgment. The court noted that Smith's 120–month sentence was to be followed by 5 years of Supervised Release, which did not include conditions requiring participation in a mental health treatment program or that he take prescribed medications.

At the conclusion of the June 6, 2013 hearing, the court stated that it was prepared to find that Smith was suffering from a mental disease or defect, but that it had significant questions about whether "as a result ... his release would create a substantial risk of bodily injury to another person or serious damage to property of another," as required to order commitment under § 4246(d). The court, therefore, continued the hearing to give the parties

an opportunity to present additional evidence. The court also ordered, among other things, that Smith report whether he would agree to a revision of his conditions of Supervised Release to include requirements that he participate in a mental health treatment program as ordered by the United States Probation Office for the Middle District of Georgia (the "Georgia Probation Office") and that he take prescribed medications for at least six months, and longer if required to do so by the Georgia Probation Office. The court also directed its Probation Office to confer with the Georgia Probation Office and report whether, if Smith is released, that office was prepared to assure that he would have a place to live and a mental health treatment program in which to participate. *See* June 7, 2013 Order.

On June 17, 2013, this court's Probation Office reported that it had conferred with its counterpart in Georgia, and that if Smith were released, the Georgia Probation Office would seek to have his conditions of release modified to include placement in a Residential Re-entry Center for a minimum of six months and participation in mental health treatment as an outpatient.[2] See June 17, 2013 Report of Probation Office. The report noted that neither the Re-entry Center nor the mental health facility could require Smith to take his medications. *See id.*

Smith subsequently reported that he agreed to the modifications of the conditions of his Supervised Release proposed by the court and the Georgia Probation Office.

On June 20, 2013, the government filed an Addendum (the "2013 Addendum") to the 2012 Panel Report written by Dr.

---

**2.** The court was informed that there was not an in-patient program in Georgia to which

Smith could be admitted.

Shawn Channel, a forensic psychologist at FMC Devens who was on the panel that originally evaluated Smith. In the 2013 Addendum, Dr. Channel stated that he interviewed Smith at FMC Devens on June 13, 2013, and continued to recommend that Smith be committed pursuant to § 4246. *See* 2013 Addendum at 3, 5–6.

The evidentiary hearing resumed on June 21, 2013. The government presented the testimony of Dr. Channel and introduced the 2013 Addendum as Exhibit 4.[3] Smith did not present any additional evidence.

At the conclusion of the hearing, the court conditionally found that the government had not met its burden of proving by clear and convincing evidence that Smith should be civilly committed pursuant to § 4246, if his conditions of Supervised Release were revised in the manner agreed to by Smith. The court ordered the parties and Probation to report, by July 31, 2013, on whether Smith's conditions had been modified in the manner agreed to by Smith, and whether arrangements had been made to transport Smith to Georgia, for his placement in a Residential Re-entry Center, and for his participation in a mental health treatment program as an outpatient. See June 24, 2013 Order. The Order stated that "[i]f upon receiving the report of the parties and Probation the court is satisfied that suitable arrangements have been made for Smith to be released to serve his term of Supervised Release with the foregoing conditions, the court will enter an Order denying the Petition and ordering Smith's release." *Id.*

On July 31, 2013, the Probation Office reported that Judge Marc T. Treadwell of the Middle District of Georgia had denied Smith's request for modification of his conditions of Supervised Release. In light of this development, the court allowed the parties' motion for an extension of time until August 16, 2013 to report and ordered them to state their positions concerning whether the government had met its burden of demonstrating by clear and convincing evidence that Smith should be civilly committed if his conditions of Supervised Release were not revised. See August 5, 2013 Order. The government subsequently stated that Smith should be committed and Smith disagreed.

On August 21, 2013, the court held another hearing at which it heard argument on whether the government had satisfied its burden of proving Smith should be civilly committed rather than released on the original conditions of Supervised Release. The Georgia Probation Office participated in the hearing by telephone.

III. LEGAL STANDARDS

18 U.S.C. § 4246(d) provides that "[i]f, after [a] hearing, the court finds by clear and convincing evidence that [an incarcerated person due for release] is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another ...," the court shall commit the person to the custody of the Attorney General until such time as he either no longer poses a substantial risk of harm or a state assumes control over his treatment. 18 U.S.C. § 4246(d); *see United States v. Sahhar*, 917 F.2d 1197, 1200 (9th Cir.1990).

A "substantial" risk under § 4246 "may be based on any activity that evinces a genuine possibility of future harm to persons or property." *Sahhar*, 917 F.2d at

---

**3.** The 2012 Panel Report was admitted as Exhibit 2 and Dr. Reade's Report was admitted as Exhibit 3.

1207 (citing *Jones v. United States*, 463 U.S. 354; 364–65, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983)) (nonviolent property crime). In determining whether a substantial risk exists, a factor commonly considered is the respondent's history, if any, of significant violent behavior.[4] *See United States v. S.A.*, 129 F.3d 995, 1000–01 (8th Cir.1997); *United States v. Ecker*, 30 F.3d 966, 970–71 (8th Cir.1994); *Sahhar*, 917 F.2d at 1208. Several courts, however, have held that no past overt act of violence is necessary to a finding of substantial risk under § 4246. *See United States v. Stephenson*, 509 Fed.Appx. 277, 278–79 (4th Cir.2013); *S.A.*, 129 F.3d at 1001 (citing *Ecker*, 30 F.3d at 970); *Sahhar*, 917 F.2d at 1207–08.

■ The "clear and convincing" standard is "demanding." *Spence v. Superintendent*, 219 F.3d 162, 172 (2d Cir.2000). The Supreme Court has instructed that the standard is met only when a party can "place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S.Ct. 2433, 81 L.Ed.2d 247 (1984). This standard is satisfied only when "the material [one party] offered instantly tilted the evidentiary scales in [its favor] when weighed against the evidence [the other party] offered in opposition." *Id.* The First Circuit has described the standard as "more than a preponderance but less than beyond a reasonable doubt." *In re Pratt*, 462 F.3d 14, 21 (1st Cir.2006).

## IV. DISCUSSION

■ The court finds that the government has not proven by clear and convinc-

ing evidence that Smith is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.

■ The court accepts that Smith is schizophrenic and, therefore, has a mental disease or defect. Smith exhibits "grandiose and delusional" behavior, believing at times that he is a doctor or a General. *See* 2013 Addendum at 3. However, as the Supreme Court has explained, to justify a civil commitment the government must by clear and convincing evidence prove "something more serious than is demonstrated by idiosyncratic behavior." *Addington v. Texas*, 441 U.S. 418, 427, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

It is not certain that Smith's mental disease—schizophrenia—is causing the behavior that the government contends justifies his civil commitment. Dr. Reade stated that, "Of significant concern is the unresolved question of Mr. Smith's history of syphilis, because of the possibility that Mr. Smith could be suffering from an advanced case of this disease and that his psychiatric and cognitive symptoms could be secondary to neurosyphilis." Reade Report at 9. Syphilis is not a mental disease and can, according to Dr. Reade, be treated. Id. at 10. If it is syphilis and not schizophrenia that is causing the conduct that prompted the Petition, there would not be a proper basis to commit Smith pursuant to § 4246 because the "substantial risk" of danger must be the "result" of a mental disease or defect. However, for present purposes the court assumes, without finding, that any danger

---

4. The reported cases have also discussed: the respondent's history of drug or alcohol abuse, *see Ecker*, 30 F.3d at 970–71; the respondent's history of failing to take prescribed medication, *see S.A.*, 129 F.3d at 1000–01; *Ecker*, 30 F.3d at 970–71; whether the respondent has named any targets for violent behavior, *see Ecker*, 30 F.3d at 970–71; and the respondent's previous use of weapons, *see id.*

that would be created by Smith's release would be the result of his schizophrenia.

As explained earlier, the government's burden is to prove a "substantial" risk of bodily harm to another person or of serious property damage by clear and convincing evidence. It has not done so.

In determining whether the government has proven that Smith's release would present the required substantial risk of danger, the court has seriously considered the opinions of Dr. Channel, Dr. Reade, and the FMC Devens Panel, as well as the reasons for them. However, as this court recently wrote in explaining principles that apply to evaluating the testimony of all experts:

> Even when the testimony is unequivocal, "[t]he court may not rubber stamp the conclusions reached by a court-appointed expert." *Gonzales v. Galvin,* 151 F.3d 526, 535 (6th Cir.1998). Rather, the court must recognize "that even an impartial expert can be wrong, and that the impartial expert must be subjected to the same evaluation of credibility as any other witness." *DeAngelis v. A. Tarricone,* 151 F.R.D. 245, 247 (S.D.N.Y.1993). This means, among other things, that the court must consider the reasons for the impartial expert's opinions and disregard them to the extent that they rely on unproven or erroneous assumptions. The court must also "decide how much of [the] witness's testimony to believe, and how much weight it should be given." First Circuit Pattern Jury Instr. 2.07 (6/14/02).

*Kosilek v. Spencer,* 889 F.Supp.2d 190, 234 n. 15 (D.Mass.2012).

The court has considered the reasons for the experts' conclusions that Smith will be dangerous if released and finds that they are based, to a meaningful degree, on certain erroneous assumptions. Dr. Channel, Dr. Reade, and the FMC Devens Panel each based their opinions in part on the assumption that Smith has a significant history of violence. The 2012 Panel Report states that Smith "has a well-documented history of violence," and that he "has exhibited increasingly violent and threatening behavior during his incarceration...." *See* 2012 Panel Report at 8, 10. Dr. Reade's Report, although generally more cautious, states that Smith "has a history of significant violence in the remote past" placing him at a higher risk for future violence. *See* Reade Report at 10. Dr. Channel wrote that Smith has a violent history that escalated while he was in prison. *See* 2013 Addendum at 5. Dr. Channel testified that the best predictor of future violent behavior is past violent behavior. Therefore, the view that Smith has a significant history of violence was evidently important to his opinion, and to the opinions of the Panel and Dr. Reade as well.

However, the evidence does not prove that Smith has a significant history of violence. Rather, it indicates that he does not. Smith's Pre-sentence Report, Exhibit 1, details his criminal history. It includes many convictions for drug offenses, but only a single conviction for a crime of violence. More specifically, in 2002, Smith was convicted of battery (family violence) for hitting and choking his girlfriend, and was sentenced to twelve months probation. *See* Ex. 1, PSR ¶ 41. In 1980, Smith was charged twice with armed robbery, in one instance for allegedly using a pistol to rob someone of $237, but neither charge was prosecuted to a conclusion. *Id.* PSR ¶¶ 46, 58. There were no alleged incidents of violent behavior by Smith between 1980 and 2002. Nor has he ever been convicted of using a weapon.

Smith was incarcerated in 2002. He received seven Bureau of Prisons incident reports between 2003 and 2009 for "As-

sault Without Serious Injury." See 2012 Panel Report at 7. In that period Smith also received ten incident reports for "Threatening Bodily Harm" and one incident report for "Possession of a Dangerous Weapon." There have been no reports of violence by Smith since 2009. In November, 2012, however, Smith allegedly threatened to kill a psychiatrist. No evidence was introduced concerning the facts of these reported prison incidents.

In view of the foregoing, the court finds that Smith does not have a proven significant history of violence. Therefore, the opinions of Dr. Channel, Dr. Reade, and the Panel must be discounted to the extent that they relied on this erroneous assumption. *See Kosilek,* 889 F.Supp.2d at 234 n. 15; First Circuit Pattern Jury Instr. 2.07 (6/14/02).

While every case is unique, the conclusion that Smith does not have a significant history of violence that suggests future dangerousness is reinforced by a comparison with cases in which civil commitment was found to be justified based in meaningful measure on such a history. For example, in *S.A.* the Eighth Circuit wrote concerning a juvenile detainee who was evaluated for civil commitment at FMC–Rochester:

> [T]he record reveals that S.A. had a long history of violent and aggressive behavior and mental instability. During his stays at various juvenile correction facilities, he has repeatedly assaulted both staff members and other detainees and has shown a penchant for destruction of property.... Furthermore, he wrote two letters while at FMC–Rochester professing his violent tendencies and threatening to commit future crimes.

*S.A.,* 129 F.3d at 1000–01. Similarly, in *Sahhar,* the Ninth Circuit noted the "evidence of nearly a decade of violent, antiso-

cial behavior by defendant." *Sahhar,* 917 F.2d at 1208. In addition, the court wrote:

> During his period of evaluation and treatment from November 1987 to October 1988, Sahhar verbally and physically threatened staff members and other inmates, had to be physically restrained on at least one occasion, damaged at least three cells in which he was housed and physically assaulted a psychiatrist by approaching her from behind and squeezing her neck.

*Id.*

In contrast, it is noteworthy that Smith has received no incident reports for violent conduct since 2009, a period of four years. More significantly, in 2012, Smith began taking medications prescribed for schizophrenia, Haldol and Cogentin. As Dr. Channel and Dr. Reade agreed, Smith has been more rational, lucid, calm, and tractable since he began taking those medications. *See* Reade Report at 8. Continued use of prescribed medications should reduce any risk that Smith will be dangerous in the future. Smith testified that if released he would continue taking the medications for some time, at least. The court recognizes that his promise to take prescribed medications voluntarily may prove to be unreliable. However, if deemed necessary or appropriate, the court in the Middle District of Georgia can modify the conditions of Smith's Supervised Release to require that he take prescribed medications and revoke his release if he fails to do so.

The court has also considered the results and interpretation of the Violence Risk Appraisal Guide (the "VRAG") on which the 2012 Panel Report and Dr. Channel relied. The VRAG is an actuarial instrument used to predict the risk of future violence. The value of such instruments is debatable. *See* Alexander Scherr, *Daubert & Danger: The "Fit" of*

*Expert Predictions in Civil Commitments,*" 55 Hastings L.J. 1 (2003) (discussing critiques of actuarial instruments in assessing an individual's risk of future violence). According to Dr. Channel, Smith's score on the VRAG was 12. The 2012 Panel Report states that "[t]he results of the VRAG indicate a 44% probability that Smith will engage in at least one violent offense in the next seven years, and a 58% probability that he will engage in at least one violent offense in the next ten years." 2012 Panel Report at 10. However, Dr. Reade more persuasively explains that:

> [T]he Panel incorrectly asserted that Mr. Smith's score on the VRAG indicated "a 44% probability that Mr. Smith will engage in at least one violent offense in the next seven years, and a 58% probability that he will engage in at least one violent offense in the next ten years." This is a misstatement and misunderstanding of the VRAG risk estimate data. The correct interpretation is that 44% of the study sample that had a profile similar to Mr. Smith's engaged in a violent act within a seven year period. It is not possible to extrapolate from population data to predict behavior for an individual.

Reade Report at 7. Therefore, the court finds that the weight to be given the opinions of the 2012 Panel and Dr. Channel is diminished because they relied on an erroneous interpretation of Smith's VRAG score in developing their views concerning the risk of his future dangerousness.

In addition, Smith is now 53 years old. As Dr. Channel testified, a person who was violent before he was 30 years old is less of a risk to be violent by the time he reaches age 50.

In summary, the court finds that Smith is suffering from a major mental illness, schizophrenia. It assumes that, as a result, he exhibits "grandiose and delusional thinking." *See* 2013 Addendum at 3. However, the credible evidence does not give the court "an abiding conviction that ... [it is] 'highly probable'" that Smith's release would create a substantial risk of bodily injury to another person or serious damage to the property of another. *Colorado,* 467 U.S. at 316, 104 S.Ct. 2433. Therefore, the government has not proven by clear and convincing evidence that Smith should be civilly committed pursuant to § 4346. Accordingly, the court is ordering his release and, as jointly requested by the parties, staying that Order to permit arrangements to be made for Smith's transportation to the Middle District of Georgia and for his housing there.

## V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The petition to have Smith civilly committed pursuant to 18 U.S.C. § 4246 (Docket No. 1) is DENIED.

2. Smith shall be released from his sentence on September 30, 2013, to begin serving his term of Supervised Release.