# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 02-2593

———————

United States of America,     *
    *
       Petitioner - Appellee,     *
    *   Appeal from the United States
   v.     *   District Court for the
    *   District of Minnesota.
Phillip LeClair,     *
    *
       Respondent - Appellant.     *

———————

Submitted:  May 14, 2003
Filed:  August 5, 2003

———————

Before LOKEN, Chief Judge, BRIGHT, Circuit Judge, and SMITH CAMP[1], District Judge.

———————

BRIGHT, Circuit Judge.

Phillip LeClair appeals the district court's[2] order committing him to the custody of the Attorney General because he was found to suffer from a mental disease or

———————

[1]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska, sitting by designation.

[2]The Honorable Ann D. Montgomery, United States District Judge for the District of Minnesota, adopting the recommendation of the Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

defect posing a substantial risk of either bodily injury to another person or serious damage to the property of another. 18 U.S.C. § 4246. We affirm.

I.    BACKGROUND

On July 12, 2000, police arrested LeClair and charged him with assault and battery with a dangerous weapon. While visiting his parents, LeClair reportedly hit an appliance repairman over the head with either an axe or a log splitter without apparent provocation. LeClair exhibited signs of hallucinations. He was referred to the Federal Medical Center in Springfield, Missouri for a competency and insanity evaluation. LeClair's evaluation team believed he presented a danger due to his mental illness and that he probably was insane at the time of the assault.

On September 25, 2000, the United States District Court for the Western District of Oklahoma found LeClair incompetent to stand trial and ordered him committed for treatment and evaluation for 120 days. LeClair was then sent to the Federal Medical Center in Rochester, Minnesota (FMC-Rochester) for restoration of competency. LeClair was involuntarily medicated. After 120 days, the district court determined LeClair remained incompetent and ordered him to remain in treatment for an additional 120 days.

In July 2001, LeClair began to take his medications voluntarily. In mid-July 2001, Dr. Daniel Carlson, a clinical psychologist at FMC-Rochester, concluded LeClair may be competent to stand trial. On August 29, 2001, the United States District Court for the Western District of Oklahoma found that LeClair remained incompetent to stand trial and ordered him committed for a determination of whether he is mentally ill and would present a substantial risk on release. 18 U.S.C. § 4246. LeClair returned to FMC-Rochester. In October 2001, a risk assessment panel at FMC-Rochester found LeClair still exhibited a significant amount of delusional thinking.

In the United States District Court for the District of Minnesota, the government filed a petition to determine the condition of an imprisoned person due for release on December 17, 2001. On March 5, 2002, a magistrate judge held a hearing at FMC-Rochester. Dr. Carlson testified that LeClair suffers from mental illness, specifically undifferentiated schizophrenia, alcohol and inhalant dependence, and borderline intellectual functioning. Dr. Carlson testified that LeClair demonstrated the following symptoms: paranoid, somatic, and grandiose delusions; thought disorders; auditory hallucinations; and extreme social isolation. Dr. Carlson evaluated LeClair's prognosis for recovery as very poor. Dr. Carlson opined that LeClair would pose a substantial risk of harm if released based on certain historical risk factors for predicting future dangerousness.

Pam Young, a social worker, testified that she had unsuccessfully attempted to find suitable state inpatient placement for LeClair in Oklahoma. LeClair testified briefly on his own behalf. LeClair did not call any expert witnesses to contradict Dr. Carlson's opinion.

The magistrate judge concluded that the government had established, by clear and convincing evidence, LeClair was mentally ill and dangerous and no suitable state placement was available at the time. The magistrate judge recommended LeClair be committed under § 4246(d). After hearing objections, the district court adopted the magistrate judge's recommendation.

II.   DISCUSSION

Under § 4246(d), a person may be committed to the custody of the Attorney General, if the district court determines: (1) the person presently suffers from a mental disease or defect; (2) the person's release would create a substantial risk of bodily injury to another person or serious damage to the property of another; and (3)

no available, suitable state placement exists. 18 U.S.C. § 4246(d).[3] LeClair argues that the government failed to meet its burden of establishing dangerousness by clear and convincing evidence. We review the district court's finding of dangerousness for clear error. United States v. Ecker, 30 F.3d 966, 970 (8th Cir. 1994).

Our review of the hearing testimony and of the written record, leads us to conclude that the government presented adequate proof to support, by clear and convincing evidence, that LeClair was mentally ill and dangerous. LeClair argues

---

[3]Section 4246(d) states:

> (d) Determination and disposition.--If, after the hearing, the court finds by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, the court shall commit the person to the custody of the Attorney General. The Attorney General shall release the person to the appropriate official of the State in which the person is domiciled or was tried if such State will assume responsibility for his custody, care, and treatment. The Attorney General shall make all reasonable efforts to cause such a State to assume such responsibility. If, notwithstanding such efforts, neither such State will assume such responsibility, the Attorney General shall hospitalize the person for treatment in a suitable facility, until--
>> (1) such a State will assume such responsibility; or
>> (2) the person's mental condition is such that his release, or his conditional release under a prescribed regimen of medical, psychiatric, or psychological care or treatment would not create a substantial risk of bodily injury to another person or serious damage to property of another;
> whichever is earlier. The Attorney General shall continue periodically to exert all reasonable efforts to cause such a State to assume such responsibility for the person's custody, care, and treatment.

18 U.S.C. § 4246.

that only an uncorroborated criminal report supports the dangerousness finding and that the report contains double and triple hearsay. Andrew Willey, a Bureau of Indian Affairs Criminal Investigator,[4] filed a report describing the assault in detail, and the court received the report without objection. Willey based part of his report on statements LeClair's parents provided to other investigating officers.

LeClair argues that the statements are unreliable because the statements are inconsistent regarding whether LeClair used an axe or a log splitter. While the report does contain matters that are hearsay, it does not preclude Dr. Carlson from relying on it in reaching his conclusion. The facts or data that form the basis for an expert opinion "need not be admissible in evidence" in order for the expert's opinion to be admitted so long as the evidence is a type reasonably relied on by the experts in the field. Fed. R. Evid. 703. In addition to the report, the victim, in a handwritten letter, explained the assault occurred without provocation.

LeClair next argues that the government did not provide enough evidence to show that he would be dangerous if released, because the other factors Dr. Carlson relied on to make his dangerousness finding are insufficient and he has had only one aggressive act, the assault. While Dr. Carlson admitted on cross-examination that LeClair has not shown any aggressive behavior while in treatment, Dr. Carlson testified that a variety of factors weighed into his dangerousness finding, including the underlying assault. Overt acts of violence are not required to prove dangerousness. United States v. Steil, 916 F.2d 485, 487-88 (8th Cir. 1990); see also Ecker, 30 F.3d at 970 (holding where last assault occurred ten years ago and no assault in three years of confinement did not require a conclusion of not dangerous).

---

[4]The assault occurred on Ponca Indian Tribe of Oklahoma land.

Dr. Carlson in forming his opinion relied on more than just LeClair's assault of the repairman. As stated previously, Dr. Carlson noted other clinical factors which suggest LeClair may be dangerous on release including: undisputed, long history of alcohol and inhalant abuse; extreme paranoia and grandiose delusions; LeClair demonstrated little insight into his mental illness and need for treatment; no assurance of compliance with treatment outside a structured setting; potential access to weapons; and lack of external environmental controls on release. Dr. Carlson based his expert opinion on more than the assault and sufficiently established evidence of LeClair's future dangerousness. LeClair did not present any contradictory evidence to show Dr. Carlson erred in forming his opinion on LeClair's dangerousness.

Under these circumstances, we cannot say that the district court clearly erred in determining the government failed to present clear and convincing evidence of LeClair's dangerousness due to his mental illness. We note, however, that the Attorney General must continue efforts to place LeClair in a state facility in Oklahoma and that while confined LeClair shall receive treatment which may lead to his release or conditional release. 18 U.S.C. § 4246(d)-(e).

III.   CONCLUSION

Accordingly, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-