# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3954

_____

United States of America

*Plaintiff - Appellee*

v.

Larry Rick Mikawa

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 15, 2016
Filed: February 22, 2017
[Published]

_____

Before RILEY, Chief Judge, WOLLMAN and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

After being found not guilty by reason of insanity of false personation of a federal officer in November 2012, Larry Mikawa was civilly committed pursuant to 18 U.S.C. § 4243. Two years later, the mental health facility treating Mikawa determined he had recovered from his mental illness sufficiently to be eligible for discharge from the psychiatric hospital. The government opposed release, and the

district court[1] held an evidentiary hearing. In its order, the district court denied release, finding that Mikawa posed a substantial risk of danger to other persons or property. Mikawa appealed, and we now affirm finding no clear error.

## I. Background

On April 6, 2010, Larry Mikawa was indicted for false personation of a federal officer in violation of 18 U.S.C. § 912. Based on a stipulated psychiatric report, the district court found Mikawa incompetent to proceed and ordered him committed to determine if competency could be restored. Mikawa was transferred to the Federal Medical Center (FMC) in Butner, North Carolina for treatment. On September 11, 2012, the district court found Mikawa competent to proceed based on an updated psychiatric evaluation. Mikawa was transferred to the U.S. Penitentiary in Leavenworth, Kansas for further proceedings in his criminal case. While there, Mikawa stopped taking his psychiatric medications, and his psychotic symptoms returned.

Shortly thereafter, the parties filed a stipulation of facts in support of an insanity plea based on a doctor's conclusion that Mikawa was unable to appreciate the nature and quality or wrongfulness of his acts at the time of the offense. On November 27, 2012, the district court found Mikawa not guilty by reason of insanity and, per the stipulation, committed him pursuant to 18 U.S.C. § 4243. Mikawa was subsequently transferred to the FMC in Rochester, Minnesota in March 2013.

On January 7, 2015, the warden of FMC Rochester filed a "Certificate of Recovery and Request to Discharge from Psychiatric Hospital," which stated that clinicians believe that Mikawa "has recovered from his mental disease or defect to

---

[1]The Honorable Dean Whipple, United States District Court for the Western District of Missouri.

such an extent that his release would no longer create a substantial risk of bodily injury to another person or serious damage to the property of another." Attached were the reports of two Risk Assessment Panels (RAP)—composed of at least two non-treating psychiatric professionals and chaired by the facility's chief of psychology—dated April 8, 2014, and November 12, 2014. Both panels concluded that Mikawa had suffered from a severe mental illness, diagnosed as "schizoaffective disorder, bipolar type," for at least three decades. After reviewing multiple psychiatric evaluations and treatment notes and conducting interviews of Mikawa and his ex-wife, the April 2014 panel recommended unconditional release because there was no record of Mikawa causing injuries or serious property damage, and his age and lack of substance abuse suggested future violence was unlikely. The panel did acknowledge that it was unlikely Mikawa—who did not believe he had a mental illness or needed medications—would independently continue treatment, and thus his mental status would likely deteriorate upon release. Because Mikawa's treating psychologist was on extended medical leave in April 2014, another RAP was convened in November 2014. The second RAP found no reason to alter its prior recommendation of unconditional release. The second panel found little risk of injury or property damage as Mikawa had no intent or history of causing harm, although it predicted he "likely" would engage in "nuisance or bizarre behavior that may bring him to the attention of law enforcement."

On January 13, 2015, the government objected to the release recommendation and requested a discharge hearing. In support of its request, the government attached a declaration from Mikawa's treating psychiatrist, Dr. Dionne Hart, who opined that Mikawa should not be unconditionally released. The government also had Mikawa evaluated by Dr. Dawn Peuschold, who concluded that he should not be released.

Because the government opposed unconditional release, another RAP convened on March 17, 2015, to offer an opinion on a proposed conditional release plan. The conditional release plan placed Mikawa, who was primarily a resident of

Alaska prior to his arrest, at Marenah's Assisted Living Home in Anchorage. The home had surveillance cameras and an onsite care worker who assisted with administering medications, hygiene, and programming. Mikawa would be required to receive mental health treatment provided by Anchorage Community Mental Health and to take all prescribed medications. Further, Mikawa would be supervised by Tim Astle of the U.S. Probation Office in Anchorage, who would have access to all of Mikawa's treatment records and to the home. Mikawa also would be required to submit to drug testing. His failure to comply with the conditions of release could result in his return to custody. The March 2015 panel unanimously agreed that the proposed conditional release would "adequately control and minimize any risk related to Mr. Mikawa's release from custody."

The district court held a discharge hearing on October 5 and 6, 2015, and heard testimony from ten witnesses. Three of the witnesses, doctors Jason Gabel, Daniel Carlson, and Andrew Simcox, participated as members of one or more of Mikawa's three RAPs. Each of them opined that either conditional or unconditional release would be appropriate as Mikawa was one of the "least dangerous" committed patients they had seen, and he had no history of substance abuse, weapon ownership, or infliction of serious injury on others. Two of Mikawa's mental health professionals—his psychologist at FMC Rochester, Dr. Emily Wakeman, and the mental health coordinator at Leavenworth, Jeff Cowan—testified that Mikawa was not a "threat to anyone" and had not had any physical altercations while committed. Astle and Elizabeth Meyer, a social worker at FMC Rochester, testified about the proposed conditional release plan and Astle's inspection of the facilities and services Mikawa would rely on in Anchorage if conditionally released.

Dr. Dionne Hart, Mikawa's treating psychiatrist at FMC Rochester, disagreed with her fellow clinicians, opining that Mikawa should not be released. In her declaration, she cited three observations that led her to conclude that Mikawa "has not reached the maximum benefit from hospitalization:" first, he repeatedly insists he

-4-

does not have a mental illness and will not take his medications; second, he continues to have delusions about Sarah Palin, the officers who arrested him, and being a law enforcement officer; and third, he has a preoccupation with his ex-wife, who does not want to have any contact with him. At the hearing, Dr. Hart expressed concern that Mikawa would contact his ex-wife, citing two letters and a package he had recently addressed to homes on the street where she lived. Dr. Hart recommended that Mikawa remain at FMC Rochester for further treatment, as she did not believe he would be able to comply with the conditions of release.

Dr. Dawn Peuschold, the government's independent psychologist, testified consistently with her report that Mikawa had not recovered to such an extent that his unconditional or conditional release would no longer create a substantial risk of bodily injury to another person or serious damage to the property of another. Her conclusions were based on a review of Mikawa's records as well as a four-hour and forty-minute interview with him. Dr. Peuschold agreed that Mikawa suffers from schizoaffective disorder, bipolar type and that he experiences symptoms, which are sometimes severe, both during and absent treatment. Mikawa's symptoms cause him to misperceive external reality, giving him the mistaken belief that he does not have a mental illness and does not need treatment. Dr. Peuschold found that Mikawa's mental illness causes him to "display[] a multidimensional pattern of disturbing, aggressive, or intimidating behaviors," which he intends to continue and often lacks the ability to control. She found his behaviors "concerning" and subjectively "threatening." In addition, Dr. Peuschold testified that she does not believe Mikawa will continue to take medications outside of a hospital setting and "is not stable enough" to comply with the other conditions of release.

The final witness was Mikawa's second ex-wife, Cynthia Mikawa. She was married to Mikawa from 1999 to 2008 and the couple has one child, who was thirteen at the time of Ms. Mikawa's testimony. During their marriage, Mikawa was primarily medication compliant and held a steady job in Alaska, but in 2007 he abruptly

disappeared, stopped taking medication, and traveled to Missouri. After his disappearance, Mikawa called and wrote emails that Ms. Mikawa found threatening: calling her a "demon," stating she needed "to be killed" and was going to "go to hell," and threatening to take their daughter to the wilderness. She obtained a protective order against Mikawa in 2008, which he was found guilty of violating when he showed up at her house late at night yelling. According to Ms. Mikawa, after her ex-husband's arrest in 2010 and as recently as August 2015, he wrote letters to her and her daughter from prison, most of which she returned to sender. On the outside of the envelopes, Mikawa wrote notes saying, among other things, that he was going to arrange for Ms. Mikawa to be killed. At the hearing, Ms. Mikawa testified that Mikawa's release makes her afraid for her and her daughter's safety because he will not stay on his medications or be able to abide by the conditions of release.

In an order dated December 1, 2015, the district court denied Mikawa discharge from commitment, adopting the conclusions of the government's expert and finding that Mikawa failed to carry his burden to prove that his release would not create a substantial risk of bodily injury to another person or serious damage to property of another. Mikawa appeals this order.

## II. Discussion

A person found not guilty by reason of insanity of an offense that did not involve a substantial risk of bodily injury or property damage[2] is eligible for release, or conditional release, if he can prove by a preponderance of the evidence that "his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect." 18

---

[2]The parties agree that Mikawa's offense, false personation of a federal officer in violation of 18 U.S.C. § 912, did not involve a substantial risk of bodily injury or property damage.

U.S.C. § 4243(d). If the standard is met, the district court shall order the commitment be completely discharged, or order "that he be conditionally discharged under a prescribed regimen of medical, psychiatric, or psychological care or treatment that has been prepared for him, that has been certified to the court as appropriate by the director of the facility in which he is committed, and that has been found by the court to be appropriate." 18 U.S.C. § 4243(f)(2)(A). We review an appeal of a district court's order continuing commitment under 18 U.S.C. § 4243 and its dangerousness finding for clear error. See United States v. Bilyk, 949 F.2d 259, 261 (8th Cir. 1991) (citing United States v. Steil, 916 F.2d 485, 488 (8th Cir. 1990) (holding that the "clearly erroneous standard governs our review of a district court's . . . finding of dangerousness" under 18 U.S.C. § 4246)).[3]

Although the warden recommended both Mikawa's unconditional and then conditional release, on appeal Mikawa challenges only the district court's refusal to order conditional release. Mikawa also does not challenge the finding that he presently suffers from a severe mental disease, namely schizoaffective disorder, bipolar type, which causes him to experience delusions, hallucinations, periods of disorganization, and mood symptoms. Thus, the central question in this appeal is whether the district court clearly erred in concluding that because of his mental illness, Mikawa's conditional release would create a substantial risk of bodily injury to another person or serious damage to the property of another.

The district court found the government's expert, Dr. Peuschold, to be credible and found her conclusions "persuasive and consistent with the record as a whole."

---

[3]Whereas 18 U.S.C. § 4243 concerns the commitment of a person found not guilty by reason of insanity, 18 U.S.C. § 4246 addresses the commitment of a hospitalized person following expiration of his or her sentence. The standard used to discharge commitment under §§ 4243 and 4246 is the same; however, depending on the procedural posture, the burdens of proof may differ. Compare 18 U.S.C. §§ 4243(d), (f) with 18 U.S.C. §§ 4246(d), (e).

Mikawa argues that Dr. Peuschold's conclusions should not be credited because she documents only one instance of physical injury to another person—Mikawa punching his first wife twenty-five years ago—and fails to connect Mikawa's rude, annoying, and disturbing behaviors to any substantial risk of bodily injury or property damage. Instead, Mikawa argues the preponderance of the evidence supports the conclusion of the three RAPs that the absence of violence, substance abuse, and weapon use in Mikawa's history makes it unlikely that he poses a physical danger to others.

The district court rejected Mikawa's argument and refused to credit the opinions of the doctors who served on the RAPs, finding they were "not supported by the record." Although the district court highlighted several facts to support its dangerousness finding, the RAP doctors' conclusions deserve due consideration given their cumulative experience serving on thousands of risk panels for committed patients and their consideration of a plethora of Mikawa's forensic, health, and legal records and a multi-year course of observation, interviews, and testing of Mikawa. Nevertheless, the district court substantiated its dangerousness finding, citing to fourteen acts by Mikawa which "were violent or pose a risk of bodily injury to another person or serious damage to property of another," including that he: (1) used a Samurai sword to destroy property at his apartment in 1988; (2) hit his first wife several times during a single incident in the late 1980s; (3) had protective orders issued against him by his second ex-wife, a gay rights organization, and workers at a sports arena in Anchorage, Alaska; (4) left threatening letters at a Kansas City, Missouri federal courthouse in 2010; (5) was placed in leg irons and transported by stretcher at FMC Butner in August 2011 after verbally assaulting and pulling away from an escorting officer; (6) sent letters to his second ex-wife from FMC Butner indicating that she needed to be killed; (7) threw water on an electric fan outside his cell in an effort to shock his cellmate; (8) threw a milk carton with feces and urine at a correctional officer in July 2011; (9) spit at employees while temporarily housed at the Federal Correctional Institution in Oxford, Wisconsin in 2013; (10) called his treating psychiatrist, Dr. Hart, a "chemical terrorist"; (11) pretended to "shoot" at

correctional officers by pointing his fingers at them in the shape of a gun; (12) pounded and kicked his cell door at FMC Rochester; (13) made near-daily reports to FMC Rochester doctors and employees about other patients' behavior, considering himself a law enforcement officer; and (14) sent letters to his daughter (directly and through a friend of hers) in August 2015 with a notation to not show the letter to her mother. Given these detailed findings and our deference to them, we cannot conclude it was clear error for the district court to reject the opinions of some experts and adopt the opinion of another. See Bilyk, 949 F.2d at 261 ("Given 'the trial judge's awesome responsibility to the public to ensure that a clinical patient's release is safe,' the district court may reject experts' conclusions when their reasoning supports different results." (quoting United States v. Clark, 893 F.2d 1277, 1282 (11th Cir. 1990))).

We recognize that perhaps as compared to other committed patients, Mikawa has few documented incidents of physical injury to another person. The absence of prior violent acts certainly can be a key factor in analyzing whether discharge of commitment is appropriate, but "overt acts of violence are not required to prove dangerousness." United States v. LeClair, 338 F.3d 882, 885 (8th Cir. 2003) (dangerousness proven by clear and convincing evidence where defendant had only one aggressive act, an assault, and had not shown any aggressive behavior while in treatment); United States v. Williams, 299 F.3d 673, 677 (8th Cir. 2002) (commitment appropriate even though defendant had "minimal history of actual violence" and a "relatively problem-free incarceration"); Steil, 916 F.2d at 487–88 (threatening letters and belief that delusions are real enough to prove dangerousness even though defendant had no history of violent behavior). Here, the district court pointed to one act of overt violence—Mikawa's admitted attack of his first wife—as well as several threats of violence, harassing and assaultive behaviors, and aggressive and menacing acts. It was not clear error to rely on these alarming behaviors in finding Mikawa's release created a substantial risk of harm. See Williams, 299 F.3d at 677 (considering "significant episodes of bizarre, defiant, and explosive behavior" during

incarceration). It is true that Mikawa's assault of his first wife is entitled to less weight because it occurred over twenty-five years ago, but it need not be entirely discounted. See United States v. Evanoff, 10 F.3d 559, 563 (8th Cir. 1993) ("[T]he recency or remoteness of any particular activity simply affects the weight the court will give to that particular evidence."). While none of the actions cited by the district court independently may have been enough to support a finding of dangerousness, together they provided sufficient evidence from which the district court could conclude that Mikawa posed a substantial risk of bodily injury to another person or serious damage to the property of another. See United States v. Dixon, 963 F.2d 377, at *3 (8th Cir. 1992) (unpublished table decision) (per curiam) (holding there was clear and convincing evidence of a substantial risk of future harm to another under § 4246 where defendant "verbally threatened his former wife with bodily harm, exhibited antisocial behavior, and could not control his temper and emotions").

Mikawa also challenges the district court's conclusion that the conditional release plan developed for him was insufficient to ameliorate the substantial risk of injury he posed to others. Among other things, the district court was concerned that if conditionally released, Mikawa could fail to take his medication and decompensate psychiatrically, exhibit disturbing, aggressive, or intimidating behaviors in the community, walk away from the group home, harm his ex-wife or daughter, or stalk Sarah Palin. Mikawa argues that by requiring that he continue to take psychiatric medications, consent to drug testing, and risk recommitment for noncompliance, the conditional release plan adequately addressed any risk of injury from the possibility that he would stop taking his medications.

The conditional release plan included terms and conditions that would result in close monitoring of Mikawa's compliance with treatment for his mental illness, which in some circumstances would be sufficient to alleviate the district court's concerns. Given Mikawa's long-term and frequent insistence that he does not suffer from a mental illness and does not want to be on and has a repeated history of

refusing psychiatric medications, however, the district court did not clearly err in concluding that the proposed conditions did not sufficiently address the substantial risk that Mikawa would stop taking his medications, decompensate, and cause bodily harm or property damage.  See LeClair, 338 F.3d at 885 (upholding continued commitment where patient had "little insight into his mental illness and need for treatment" and there was "no assurance of compliance with treatment outside a structured setting"); see also United States v. Jackson, 19 F.3d 1003, 1008 (5th Cir. 1994) ("Section 4243 does not require that Jackson be [conditionally] released simply because there are mechanisms whereby he could be closely monitored on an outpatient basis.").  Although the district court could have imposed additional conditions to allay its concerns, see United States v. Franklin, 435 F.3d 885, 889 (8th Cir. 2006), we cannot fault the district court for failing to consider hypothetical conditions not presented to it.  In this case, it was not reversible error for the district court to deny conditional discharge based on the plan presented in the reports and at the hearing.  See United States v. Phelps, 283 F.3d 1176, 1184 (9th Cir. 2002) ("If adequate conditions cannot be or are not developed to the satisfaction of the court to ensure public safety, then the court has the responsibility to deny the release.").

While we do not find that the court clearly erred in denying the discharge of Mikawa's commitment on the record presented here, we are mindful that the statutory maximum sentence for Mikawa's offense is three years imprisonment.  See 18 U.S.C. § 912.  Mikawa has been in federal custody for nearly seven years, and his burden is to prove his eligibility for release only by a preponderance of the evidence.  18 U.S.C. § 4243(d).  "'It has to be recalled that the government's role here is not that of punitive custodian of a fully competent inmate, but benign custodian of one legally committed to it for medical care and treatment—specifically for psychiatric treatment." Steil, 916 F.2d at 488 (quoting United States v. Charters, 863 F.2d 302, 312 (4th Cir. 1988)).  A person committed pursuant to 18 U.S.C. § 4243 is entitled to an annual evaluation of his mental condition and the need for continued commitment.  18 U.S.C. § 4247(e)(1)(B).  At oral argument, it was disclosed that

Mikawa has not received such an evaluation since his prior RAP in March 2015. "In its custodial role, the government of course must fulfill its statutory duties," <u>Steil</u>, 916 F.2d at 488, and we are confident that the government will ensure Mikawa is reevaluated in due course to determine whether there is a need for his continued hospitalization. <u>See also</u> 18 U.S.C. § 4247(h) (stating that Mikawa's counsel may file a motion for a hearing to determine Mikawa's eligibility for discharge "at any time").

### III. Conclusion

For the foregoing reasons, we affirm the order of the district court.

————————————————